# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

THE FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER FOR
WAKULLA BANK,

        Plaintiff

    vs.

WALTER C. DODSON, SCOTT W. GABY,
WILLIAM F. VERSIGA, GERALD D.
BRYANT, AND WALTER L. ROBERTS,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 4:13-CV-00416-MW-CAS

**THE FDIC-R'S MEMORANDUM IN SUPPORT OF ITS MOTION**
**<u>FOR SUMMARY JUDGMENT AS TO DEFENDANTS' AFFIRMATIVE DEFENSES</u>**

Ronald S. Safer
Antony S. Burt
Valarie Hays
Lawrence H. Heftman
Kevin Reidy
SCHIFF HARDIN LLP
233 S. Wacker Drive, Suite 6600
Chicago, Illinois 60606
(312) 258-5500 (t)
(312) 258-5600 (f)

Kenneth R. Hart
Robert N. Clarke, Jr.
AUSLEY McMULLEN
123 S. Calhoun Street
P.O. Box 391
Tallahassee, Florida 32301
(850) 425-5462 (t)
(850) 222-7560 (f)

*Counsel for the Federal Deposit*
*Insurance Corporation as Receiver*
*for Wakulla Bank*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................... ii

INTRODUCTION ................................................................................................... 1

STATEMENT OF FACTS ...................................................................................... 2

    A.    The FDIC-R's Complaint ......................................................................... 2

    B.    Defendants' Affirmative Defenses ........................................................... 3

ARGUMENT ........................................................................................................... 4

I.    Defendants' Superseding Cause Defenses Fail As A Matter Of Law (Fourth, Sixth, Seventh, Eighth, Sixteenth, and Seventeenth Affirmative Defenses) ...... 5

    A.    Florida Law Forecloses Defendants' Superseding Cause Defenses ...... 6

        1.    Defendants cannot show an independent intervening cause ...... 6

        2.    Defendants cannot show an unforeseeable intervening cause ...... 8

    B.    Defendants' Superseding Cause Defenses Have Been Repeatedly Rejected ...... 10

II.    Defendants Cannot Establish Comparative Negligence (Sixth, Seventh, Eighth, Thirteenth, Fourteenth, and Twenty-Third Affirmative Defenses) ................. 13

III.    Defendants' Mitigation Defense Fails As A Matter Of Law (Thirteenth Affirmative Defense) ........................................................................................... 17

IV.    Defendants' Remaining Affirmative Defenses Are Also Defective ............... 21

    A.    The Business Judgment Rule Does Not Apply to the FDIC-R's Negligence and Gross Negligence Claims (Second and Third Affirmative Defenses) ...... 21

    B.    Defendants' Scope of Authority and Reliance Defenses Fail as to the FDIC-R's Negligence and Gross Negligence Claims (Ninth, Tenth, Eighteenth, Nineteenth, and Twenty-Second Affirmative Defenses) ...... 22

    C.    Defendants' Imputation and Estoppel Defenses Fail (Eleventh Affirmative Defense) ...... 23

    D.    Defendants' Assumption of the Risk Defense Fails (Twelfth Affirmative Defense) ...... 23

    E.    Defendants Cannot Show Consent, Ratification, or Authorization (Twentieth and Twenty-First Affirmative Defenses) ...... 24

    F.    Defendants' Affirmative Defenses That Are Mere Denials Fail (First, Fifth, Fifteenth, Seventeenth, and Twenty-Fourth Affirmative Defenses) ...... 24

CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Acosta v. United Rentals (N. Am.), Inc.*,
  No. 8:12-CV-01530-EAK, 2013 WL 869520 (M.D. Fla. Mar. 7, 2013) .................................. 23

*Atherton v. FDIC*,
  519 U.S. 213 (1997) ................................................................................................................ 22

*Blackburn v. Dorta*,
  348 So. 2d 287 (Fla. 1977) ..................................................................................................... 23

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .................................................................................................................. 4

*Commercial Carrier Corp. v. Indian River County*,
  371 So. 2d 1010 (Fla. 1979) .................................................................................................... 15

*Cooke v. Nationwide Mut. Fire Ins. Co.*,
  14 So. 3d 1192 (Fla. Dist. Ct. App. 2009) ............................................................................ 6, 8

*Coquina Inv. v. Rothstein*,
  No. 10-60786-CIV, 2011 WL 4971923 (S.D. Fla. Oct. 19, 2011) ........................................... 25

*Dep't of Children & Fam. Servs. v. Chapman*,
  9 So. 3d 676 (Fla. Dist. Ct. App. 2009) ................................................................................. 15

*Dorsey v. Reider*,
  139 So. 3d 860 (Fla. 2014) ............................................................................................... 14, 16

*Ed Ricke & Sons, Inc. v. Green*,
  609 So. 2d 504 (Fla. 1992) ....................................................................................................... 6

*FDIC v. Appling*,
  992 F.2d 1109 (10th Cir. 1993) ............................................................................................... 17

*FDIC v. Aultman*,
  No. 2:13-CV-58-FTM-38UAM, 2013 WL 3357854 (M.D. Fla. July 3, 2013) ........................ 22

*FDIC v. Bierman*,
  2 F.3d 1424 (7th Cir. 1993) ........................................................................................ 10, 11, 12

*FDIC v. Gonzalez-Gorrondona*,
  No. 91-2791, 1994 U.S. Dist. LEXIS 21094 (S.D. Fla. Mar. 10, 1994) ............................ 16, 22

*FDIC v. Johnson*,
No. 2:12-CV-209-KJD-PAL, 2014 WL 5324057 (D. Nev. Oct. 17, 2014) ................ 10, 11, 12

*FDIC v. Mahajan*,
923 F. Supp. 2d 1133 (N.D. Ill. 2013) ........................................................ 25

*FDIC v. Stahl*,
840 F. Supp. 124 (S.D. Fla. 1993) ........................................................... 22

*FDIC v. Van Dellen*,
No. CV 10-4915 DSF SHX, 2012 WL 4815159 (C.D. Cal. Oct. 5, 2012)........................ 10, 11

*FDIC v. Varrasso*,
No. CIV. 2:11-2628 WBS, 2013 WL 5493402 (E.D. Cal. Oct. 1, 2013) ......................... 10, 11

*FDIC v. Wells*,
No. 94 C 3023, 1995 WL 387580 (N.D. Ill. Jun. 27, 1995) ................................... 22

*First State Bank v. United States*,
599 F.2d 558 (3d Cir. 1979) ................................................................. 16

*Friedrich v. Fetterman & Assocs., P.A.*,
137 So. 3d 362 (Fla. 2013) .................................................................. 7

*FSLIC v. Roy*,
No. JFM-87-1227, 1990 WL 488463 (D. Md. Jan. 8, 1990)....................................... 10, 11, 12

*FSLIC v. Tex. Real Estate Counselors, Inc.*,
955 F.2d 261 (5th Cir. 1992) ............................................................... 21

*Gibson v. Avis Rent-A-Car Sys., Inc.*,
386 So. 2d 520 (Fla. 1980) ............................................................... 6, 10

*Goldberg v. Chong*,
No. 07-20931-CIV-HUCK, 2007 WL 2028792 (S.D. Fla. Jul. 11, 2007)............................ 23

*Gross v. Sand & Sea Homeowners Ass'n, Inc.*,
756 So. 2d 1073 (Fla. Dist. Ct. App. 2000) ................................................. 14

*Home Design Servs., Inc. v. Stewart*,
No. 3:09CV140-MCR MD, 2011 WL 796741 (N.D. Fla. Feb. 28, 2011) ............................. 5

*IBP, Inc. v. Hady Enters., Inc.*,
267 F. Supp. 2d 1148 (N.D. Fla. 2002) .................................................. 7, 8

*Irvine v. Cargill Inv. Servs., Inc.*,
799 F.2d 1461 (11th Cir. 1986) ............................................................ 24

-iii-

*Mazzeo v. City of Sebastian,*
  550 So. 2d 1113 (Fla. 1989) .................................................................... 23

*McCain v. Florida Power Corp.,*
  593 So. 2d 500 (Fla. 1992) ........................................................... 8, 9, 14

*Mitchell v. Skinner,*
  796 F. Supp. 1464 (N.D. Ala. 1992) ...................................................... 24

*Pa. State Police v. Suders,*
  542 U.S. 129 (2004) ................................................................................ 20

*PNC Bank N.A. v. Marino,*
  No. 2:12-CV-673-FTM-29CM, 2014 WL 667780 (M.D. Fla. Feb. 20, 2014) ...... 25

*Poole v. Lowell Dunn Co.,*
  573 So. 2d 51 (Fla. Dist. Ct. App. 1990) .................................................. 7

*RNK Family Ltd. P'ship v. Alexander-Mitchell Assocs.,*
  890 So. 2d 297 (Fla. Dist. Ct. App. 2004) ................................................ 21

*Robers v. United States,*
  134 S. Ct. 1854 (2014) ................................................................... 5, 12, 13

*RTC v. Aycock,*
  No. CIV. A. 92-0761, 1993 WL 278455 (E.D. La. Jul. 14, 1993) .......... 10, 11, 12

*RTC v. Hecht,*
  818 F. Supp. 894 (D. Md. 1992) ...................................................... 10, 11, 12

*Sallah ex rel. MRT LLC v. Worldwide Clearing LLC,*
  860 F. Supp. 2d 1329 (S.D. Fla. 2011) ................................................... 23

*Silva v. Stein,*
  527 So. 2d 943 (Fla. Dist. Ct. App. 1988) ............................................ 7, 10

*Silver v. Countrywide Home Loans, Inc.,*
  760 F. Supp. 2d 1330 (S.D. Fla. 2011) ................................................... 13

*Starling v. City of Gainesville,*
  106 So. 425 (Fla. 1925) ........................................................................... 6

*State Dep't of Ins. v. Blackburn,*
  633 So. 2d 521 (Fla. Dist. Ct. App. 1994) .............................................. 23

*Sys. Components Corp. v. Florida Dep't of Transp.,*
  14 So. 3d 967 (Fla. 2009) ....................................................................... 18

*Thompson v. Florida Drum Co.,*
    651 So. 2d 180 (Fla. Dist. Ct. App. 1995) ........................................... 18

*Townsend v. Westside Dodge, Inc.,*
    642 So. 2d 49 (Fla. Dist. Ct. App. 1994) ............................................ 10

*Trianon Park Condo. Ass'n, Inc. v. City of Hialeah,*
    468 So. 2d 912 (Fla. 1985) ........................................................ 15, 16

*Trigo v. FDIC,*
    847 F.2d 1499 (11th Cir. 1988) ...................................................... 16

*United Fixtures Co., Inc. v. Base Mfg.,*
    No. 6:08CV506ORL28GJK, 2008 WL 4550212 (M.D. Fla. Oct. 8, 2008) ....................... 24, 25

*Virgilio v. Ryland Grp., Inc.,*
    695 F. Supp. 2d 1276 (M.D. Fla. 2010) ............................................... 15

*Wallace v. Dean,*
    3 So. 3d 1035 (Fla. 2009) ........................................................... 15

**Statutes**

12 U.S.C. § 1821 ......................................................................... 17, 18

28 U.S.C. § 2680 ........................................................................... 15

Fla. Stat. § 607.0830 ................................................................... 21, 22

**Other Authorities**

12 C.F.R. § 337.11 ......................................................................... 14

12 C.F.R. § 360.1 .......................................................................... 18

Fed. R. Civ. P. 56 .......................................................................... 4

Fed. R. Civ. Proc. 12 ....................................................................... 3

H.R.Rep. No. 101-54(I), 101st Cong., 1st Sess. 2 (1989),
    *reprinted in* 1989 U.S.C.C.A.N. 86, 126 ............................................. 17

Restatement (Second) of Torts § 285 ....................................................... 14

Restatement (Second) of Torts § 435 ..................................................... 6, 8, 9

Restatement (Second) of Torts § 442A ....................................................... 7

-v-

Restatement (Second) of Torts § 442B ........................................................ 7, 10

Restatement (Second) of Torts § 451 .......................................................... 8

Restatement (Second) of Torts § 892A ....................................................... 24

Restatement (Second) of Torts § 918 ......................................................... 20

Restatement (Second) of Torts § 920A ....................................................... 17

## INTRODUCTION

Defendants served as officers and directors of Wakulla Bank ("Wakulla" or "Bank").

Beginning in 2002, Defendants pursued a high-risk strategy to expand Wakulla's portfolio of

commercial real estate ("CRE") loans, which over the next four years grew rapidly in violation

of safe and sound lending practices.  In connection with their expansion plan, Defendants

routinely approved poorly underwritten CRE loans that violated the Bank's policies and

procedures and sound lending practices, including ten poorly underwritten transactions at issue

in this lawsuit by the Federal Deposit Insurance Corporation as Wakulla's receiver ("FDIC-R").

Defendants' negligence, gross negligence, and breaches of fiduciary duty in approving these

transactions ("Loan Transactions") have caused over $15.4 million in tort damages.

Even though only Defendants had authority to approve the Loan Transactions, they have

tried to shift responsibility for Wakulla's injuries, blaming the "decline in local and national real

estate values" as well as conduct by the Bank's regulators, the FDIC-R, "each borrower and

guarantor who defaulted on the loans," and various other professionals.  Defendants package

these excuses in several legal theories—including "superseding cause," "comparative fault," and

"mitigation of damages"—each of which depends on legal premises that are untenable or

evidence that Defendants cannot supply.  Defendants also have pleaded as "defenses" multiple

theories (like "failure to state a claim" and Florida's business judgment rule) that either are not

defenses or already have been addressed by the Court.

All twenty-four of Defendants' affirmative defenses fail, in whole or part, in one or more

of these ways.  These invalid defenses include Defendants' Second, Third, Ninth, Tenth,

Eighteenth, Nineteenth, and Twenty-Second Affirmative Defenses as to the FDIC-R's claims for

negligence and gross negligence.  Each of these defenses depends on the business judgment rule,

which is not a defense to these claims. The invalid defenses also include all of Defendants' remaining defenses in their entirety. The Court should enter summary judgment on these defenses now that discovery has closed to avoid unnecessary jury instructions, motions *in limine*, and other evidentiary issues as trial approaches.

## STATEMENT OF FACTS

### A.    The FDIC-R's Complaint

The FDIC-R brought the claims in this case for negligence against Defendants who served as bank officers (Count One) and gross negligence and breach of fiduciary duty against all Defendants (Counts Two and Three). (Dkt. 1.) The FDIC-R alleges in its complaint that as the approving body for Wakulla's largest loans, the Bank's loan committee and its individual members had a duty to ensure safe and sound loan approvals that did not unduly increase the Bank's risks. (*See* Dkt. 1 ¶ 2.) Defendants had served in the banking business or on Wakulla's board of directors for decades and knew or should have known the risks associated with CRE lending and cyclical market trends. (*Id.* ¶¶ 2-3, 9-13.) Yet despite their experience and fiduciary obligations, Defendants rapidly expanded Wakulla's CRE portfolio beginning in 2002 through routine approvals of poorly underwritten CRE transactions. (*Id.* ¶¶ 3-6.) These acts of negligence, gross negligence, and breach of fiduciary duty in ignoring Wakulla's policies and procedures and sound lending practices has resulted in over $15.4 million in tort damages. (*Id.* ¶ 7; Appendix (cited as "A_ or B_") at A1, B28.)

A measure of these tort damages is the charged-off Loan Transactions. Wakulla fully or partially charged off each of these loans before the FDIC-R's appointment. (B2-3, B8-9, B14-16.) For the seven transactions that resulted in full charge-offs, the FDIC-R transferred the loans to an acquiring institution under a purchase-and-assumption agreement at their then book value,

marketed and sold any remaining collateral that Wakulla had obtained, or took both steps. (*Id.*; B21-22, B27-29; *see also* B51 at 10:18-12:5).) For the remaining three transactions, the FDIC-R disposed of the loans as part of a structured sale of a pool of loans from multiple FDIC receiverships that were sold at arm's length after a competitive bidding process. (B2-3, B8-9, B14-16.) One measure of the FDIC-R's tort damages is the sum of the funds disbursed on each Loan Transaction plus Wakulla's funding and carrying costs, less any payments received or recoveries through the loans' disposition, plus pre-judgment interest. (B27-29.)

### B.    Defendants' Affirmative Defenses

On February 27, 2014, the Court denied Defendants' motion for partial dismissal under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 36.) Defendants then filed an answer and twenty-four affirmative defenses. Several of these defenses reiterate theories that the Court already had addressed in its ruling on the motion to dismiss, like Defendants' argument that the complaint "fails, in whole or in part, to state a claim" (First Affirmative Defense). (Dkt. 37 at 1-2.) But the bulk of the affirmative defenses try to blame Defendants' conduct or the FDIC-R's tort damages on other events and parties. Among other things, Defendants cite (i) "the events of the Great Recession" for a declining real-estate market, (ii) the FDIC in its corporate capacity ("FDIC-C") and the Florida Office of Financial Regulation ("FOFR") for closing Wakulla and allegedly failing to "warn the Defendants of any alleged wrongful conduct," (iii) "each borrower and guarantor who defaulted on the loans," (iv) unspecified conduct by unnamed bank personnel and third party professionals (like "CPAs," "credit bureaus," "appraisers," "loan officers," and "outside counsel"), and finally (v) the FDIC-R, which they contend failed to mitigate damages. (Dkt. 37; Dkt. 80; B57-59, B72-74, B85-87, B93-94.)

Defendants combine these assertions in several interrelated legal theories:  superseding cause (Fourth, Sixth, Seventh, Eighth, Sixteenth, and Seventeenth Affirmative Defenses), comparative negligence (Sixth, Seventh, Eighth, Fourteenth, and Twenty-Third Affirmative Defense), failure to mitigate damages (Thirteenth Affirmative Defense), the business judgment rule (Second and Third Affirmative Defenses), "scope of authority" and "reliance" (Ninth, Tenth, Eighteenth, Nineteenth, and Twenty-Second Affirmative Defenses), "imputation" and "estoppel" (Eleventh Affirmative Defenses), "assumption of the risk" (Twelfth Affirmative Defense), and "consent," "ratification," and "authorization" (Twentieth and Twenty-First Affirmative Defenses).  (Dkt. 37 at 2-7; Dkt. 80 at 1-2.)  Defendants also deny liability to the extent that they did not vote to approve the Loan Transactions (Fifth Affirmative Defense) or the FDIC-R's tort damages are "speculative" (Fifteenth Affirmative Defense).  (Dkt. 37 at 2-7.) They then conclude with a reservation of rights (Twenty-Fourth Affirmative Defense).  (*Id.* at 7.)

The FDIC-R moved to strike eight of these affirmative defenses to the extent that they challenged the conduct of Wakulla's regulators before its failure.  (Dkt. 41.)  The Court denied that motion.  (Dkt. 51.)  The Court concluded that because these defenses raised "substantial legal questions," the issues "are more properly addressed on summary judgment."  (*Id.* at 15.)

## ARGUMENT

Summary judgment is appropriate where the pleadings and supporting materials establish that no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party can meet this standard "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  In addition, because the FDIC-R seeks summary judgment as to affirmative

defenses, the acts of negligence, gross negligence, and breach of fiduciary duty alleged in the complaint are assumed. *Home Design Servs., Inc. v. Stewart*, No. 3:09CV140-MCR MD, 2011 WL 796741, at *5 (N.D. Fla. Feb. 28, 2011) ("An affirmative defense is one that admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification or other negating matters."). Evaluated from this perspective, summary judgment is appropriate as to each of Defendants' affirmative defenses in whole or part.

I.  **DEFENDANTS' SUPERSEDING CAUSE DEFENSES FAIL AS A MATTER OF LAW (FOURTH, SIXTH, SEVENTH, EIGHTH, SIXTEENTH, AND SEVENTEENTH AFFIRMATIVE DEFENSES).**

Most of Defendants' affirmative defenses deal with causation. They maintain that conduct supposedly "not within Defendants' control" intervened and "caused and/or contributed to the alleged damages sought by Plaintiff." (Dkt. 37 at 2.) These alleged intervening causes include (i) the recent financial crisis, which Defendants blame for declining real-estate values, (ii) Wakulla's regulators, whom they blame for preventing the Bank from raising capital and for closing the Bank, (iii) the borrowers and guarantors for the Loan Transactions, whom they blame for defaulting, and (iv) the FDIC-R, which they blame for allegedly failing to mitigate damages. (Dkt. 37 at 2; Dkt. 80 at 1-2; B57-59, B72-74, B85-87, B93-94.)

These excuses are not new. Putting aside that Defendants cannot prove these defenses (the transactions at issue were already troubled before the stock market declines in September 2008, for example, undercutting the economy as the cause of the problems), courts across the country already have rejected them. Even the U.S. Supreme Court has held that the recent downturn in the real-estate markets was "foreseeable" as the law of proximate cause defines that term. *Robers v. United States*, 134 S. Ct. 1854, 1859 (2014). Florida follows the same rules as these other jurisdictions. Later events—whether economic conditions or the conduct of

-5-

regulators, borrowers, or the FDIC-R—fail to "break the causal chain" between loan approvals and the tort damages resulting from those approvals as a matter of law.

### A.   Florida Law Forecloses Defendants' Superseding Cause Defenses.

Under Florida law, a superseding cause is a "new effective cause which, operating independently of anything else, becomes [the] proximate cause of an injury." *Ed Ricke & Sons, Inc. v. Green*, 609 So. 2d 504, 511 n.6 (Fla. 1992) (internal citation and quotation omitted).  In contrast, an "intervening cause" is any cause that produces a result "*after* the negligence of the defendant." *Id.* (emphasis in original).  An intervening cause constitutes a superseding cause that "absolve[s] the negligent party" only if the cause "is fully independent and unforeseeable" and in hindsight "seem[s] to the judicial mind highly unusual, extraordinary, bizarre, or, stated differently, seem[s] beyond the scope of any fair assessment of the danger created by the defendant's negligence." *Cooke v. Nationwide Mut. Fire Ins. Co.*, 14 So. 3d 1192, 1195-96 (Fla. Dist. Ct. App. 2009) (internal citation and quotation omitted); *see also* Restatement (Second) of Torts § 435 cmt. d ("The court's judgment as to whether the harm is a highly extraordinary result is made after the event with the full knowledge of all that has happened.").  Here Defendants cannot produce evidence to meet these requirements.

#### 1.   Defendants cannot show an independent intervening cause.

Defendants cannot present any evidence that an independent intervening cause, as opposed to Defendants' tortious conduct in approving the Loan Transactions, caused the FDIC-R's damages.  By approving the transactions, Defendants "'set[] in motion' [the] chain of events resulting in injury to the plaintiff"—a circumstance that forecloses any defense of superseding cause. *Cooke*, 14 So. 3d at 1195 (quoting *Gibson v. Avis Rent-A-Car Sys., Inc.*, 386 So. 2d 520, 522 (Fla. 1980)); *see also Starling v. City of Gainesville*, 106 So. 425, 426 (Fla. 1925)

(explaining that if a subsequent event "alone would not have sufficed to produce [the injury], the defendant is liable. . . . But if the superior force would have produced the same damage whether the defendant had been negligent or not, his negligence is not deemed the cause of the injury").

No intervening event—whether the economy, the conduct of regulators, or otherwise— could have caused the FDIC-R's tort damages "alone" or "whether the defendant had been negligent or not." The Loan Committee or certain of the individual Defendants had to approve the Loan Transactions for Wakulla to enter into those transactions. In fact, even one dissenting vote on the Loan Committee historically had sufficed to prevent a loan's approval. Every loan that the Loan Committee ever approved was unanimous. (A4 at 45:1-19; A8 at 49:13-24.) Defendants' approving the Loan Transactions thus constituted not only a "but for" cause but also a substantial factor resulting in the tort damages that the FDIC-R now is entitled to recover. *E.g.*, *Friedrich v. Fetterman & Assocs., P.A.*, 137 So. 3d 362, 366 (Fla. 2013).

All of Defendants' superseding cause defenses fail for this reason. A superseding cause exists only if "the original negligence does not directly contribute to the force or effectiveness of the intervening cause." *IBP, Inc. v. Hady Enters., Inc.*, 267 F. Supp. 2d 1148, 1162 (N.D. Fla. 2002); *see also* Restatement (Second) of Torts § 442A ("Where the negligent conduct of the actor creates or increases the foreseeable risk of harm through the intervention of another force, and is a substantial factor in causing the harm, such intervention is not a superseding cause."); *accord* Restatement (Second) of Torts § 442B. This rule reflects "the familiar but accurate doctrine that 'the tortfeasor takes the plaintiff as he finds him.'" *Silva v. Stein*, 527 So. 2d 943, 943-44 (Fla. Dist. Ct. App. 1988); *see also Poole v. Lowell Dunn Co.*, 573 So. 2d 51, 54 (Fla. Dist. Ct. App. 1990). Defendants ignore this principle in blaming the economy, regulators, borrowers, and the FDIC-R for the results of *their* loan approvals.

-7-

### 2.    *Defendants cannot show an unforeseeable intervening cause.*

Defendants also cannot satisfy the second requirement for a superseding cause:

identifying an event so "highly unusual, extraordinary, [or] bizarre" that, in retrospect, the law

should relieve a wrongdoer of liability. *Cooke*, 14 So. 3d at 1196.  The use of those terms—

"unusual," "extraordinary," and "bizarre"—highlights the required "remoteness, in terms of

foreseeability, of the intervening [event]." *Id.*  In this way, "causation is not equivalent to

clairvoyance," *IBP*, 267 F. Supp. 2d at 1162, and events are neither unusual, extraordinary, nor

bizarre if the events merely occur in a way or to a degree that no one reasonably could expect.

"[I]t is immaterial that the defendant could not foresee the precise *manner* in which the injury

occurred or its exact *extent*." *McCain v. Florida Power Corp.*, 593 So. 2d 500, 503 (Fla. 1992)

(citing Restatement (Second) of Torts § 435) (emphasis added); *see also* Restatement (Second)

of Torts § 451 (stating that an intervening force prevents liability only if it "is of a kind different

from that the likelihood of which made the actor's conduct negligent").

All of Defendants' contentions focus incorrectly on the "manner" and "extent" of the

FDIC-R's tort damages.  With respect to the economy's alleged impact on the Loan

Transactions, for example, no one is arguing that an economic downturn of any kind was

unforeseeable.  On the contrary, Defendants concede that they were well aware that real-estate

markets trend in cycles of "ups and downs" and that in Florida as elsewhere, "we had real estate

declines before over the 30 years or so," in which Defendants had spent all or much of their

professional careers as bankers.  (A5 at 113:9-24; A9 at 142:9-13; A12 at 71:3-13; A15 at

166:24-167:7; A18 at 57:23-58:1.)  What Defendants claim is that they failed to predict based on

their decades of banking experience "*how deep* it would really go." (A5 at 113:15-19 (emphasis

added).) ████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

███████████████████████████

This evidence about the extent of a drop in housing prices or the "scale" of the recent recession "is immaterial" under Florida law. *McCain*, 593 So. 2d at 503. Defendants' insistence that the "the Great Recession was unforeseen and unforeseeable" (B86), is just an argument that they "neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred." Restatement (Second) of Torts § 435. That theory "does not prevent [them] from being liable." *Id.* On the contrary, the basic purpose of bank credit-underwriting and approval processes, including assigning responsibility to approve substantial loans to experienced bankers like Defendants, is to mitigate lending risks. Economic downturns are not only reasonably foreseeable in connection with loan underwriting, these downturns present a primary risk that Defendants had a responsibility to guard against. (*See, e.g.*, A15 at 167:25-168:4.)

The same holds true for Defendants' effort to blame the FDIC-R's tort damages on regulators, borrowers, and the FDIC-R. Even if conduct by one of these parties formed a step in the sequence leading to the FDIC-R's tort damages, Defendants' initial improper approval of the Loan Transactions created the conditions for these events to operate. By approving the transactions initially, Defendants increased the risk that Wakulla (and now the FDIC-R) would suffer injuries. No subsequent conduct by other parties that Defendants have asserted could constitute a superseding cause because ultimately "the harm that occurred was within the scope of the danger attributable to the defendant's negligent conduct" at the outset when they approved

the Loan Transactions. *Gibson v. Avis Rent-A-Car Sys., Inc.* 386 So. 2d 520, 522 (Fla. 1980); *see Townsend v. Westside Dodge, Inc.*, 642 So. 2d 49, 50 (Fla. Dist. Ct. App. 1994); *Silva*, 527 So. 2d at 943-44 (once a negligent act "has occurred, the defendant is responsible for whatever adverse consequences the plaintiff suffers—whether they are 'foreseeable' or not"); Restatement (Second) of Torts § 442B, cmt. a ("[A]ny harm which is in itself foreseeable, as to which the actor has created or increased the recognizable risk, is always 'proximate,' no matter how it is brought about."). Defendants cannot establish a superseding cause for this reason as well.

**B.   Defendants' Superseding Cause Defenses Have Been Repeatedly Rejected.**

The failure of Defendants' superseding cause defenses under Florida law is not an anomaly. Florida law on this point matches settled principles applied nationwide. Where failed-bank managers have made the same or similar arguments as Defendants, courts repeatedly have rejected them. *See, e.g., FDIC v. Van Dellen*, No. CV 10-4915 DSF SHX, 2012 WL 4815159, at *10 (C.D. Cal. Oct. 5, 2012); *RTC v. Aycock*, No. CIV. A. 92-0761, 1993 WL 278455, at *3 (E.D. La. Jul. 14, 1993); *RTC v. Hecht*, 818 F. Supp. 894, 900 (D. Md. 1992); *FSLIC v. Roy*, No. JFM-87-1227, 1990 WL 488463, at *1 (D. Md. Jan. 8, 1990); *see also FDIC v. Bierman*, 2 F.3d 1424, 1434 (7th Cir. 1993); *FDIC v. Johnson*, No. 2:12-CV-209-KJD-PAL, 2014 WL 5324057, at *4-5 (D. Nev. Oct. 17, 2014); *FDIC v. Varrasso*, No. CIV. 2:11-2628 WBS, 2013 WL 5493402 at *6 n.2 (E.D. Cal. Oct. 1, 2013).

In *Van Dellen*, for example, officers of the failed IndyMac Bank asserted an unforeseeable real estate market collapse as a superseding cause of damages resulting from their negligent loan approvals between July 2005 to January 2007. 2012 WL 4815159, at *1, 10. The court rejected this defense and entered summary judgment on the defense for the FDIC as receiver. *Id.* at *10. The court recognized that under California law—no different from Florida

law—this "market collapse"—the same economic downturn relied on by Defendants here—was not "independent" of the loan approvals at issue and was instead "foreseeable" or at least "caused injury of a type which was foreseeable." *Id.* (internal citations and quotations omitted). The court held that "[t]he focus of this action is Defendants' conduct at the time the loans were made"—not on later events like the financial crisis. *Id.* Because "no room for a reasonable difference of opinion" existed on this issue, the court held that this defense could not be submitted to the jury. *Id.*

The courts in *Aycock*, *Hecht*, *Roy*, *Bierman*, *Johnson*, and *Varrasso* all reached the same conclusion. These courts considered and rejected a range of explanations proffered as superseding causes no different than Defendants' excuses for their imprudent lending decisions. *Aycock*, 1993 WL 278455, at *3 (defense of "economic conditions" and "the fault of others"); *Hecht*, 818 F. Supp. at 900-901 (defense of "regulatory authorities or [] conditions, like an economic downturn, which took effect after the loans at issue were made"); *Roy*, 1990 WL 488463, at *1 (defense of "lead lender and broker fraud, unexpected borrower default and regional and national economic conditions"); *Bierman*, 2 F.3d at 1434 (defense of "the poor farm economy in Indiana"); *Johnson*, 2014 WL 5324057, at *5 (defense of "economic downturn"); *Varrasso*, 2013 WL 5493402 at *6 n.2 (defense of "market conditions, which resulted in a decline in residential property values across the region").

These cases establish that directors and officers cannot blame the consequences of their improper loan approvals on these kinds of later events because none of these events are independent of the loan approvals or unforeseeable. With respect to independence, the cases explain that these later events are "simply irrelevant to the substantive issues raised by the [FDIC's] complaint." *Aycock*, 1993 WL 278455, at *3; *Hecht*, 818 F. Supp. at 900 ("[E]ven if

conditions arising after the loans were made contributed in some way to the size of the loss, the

basic fact that the defendants made the loans remains."); *see also Bierman*, 2 F.3d at 1434

("[L]iability [is imposed] for those transactions that were unreasonable at the time that they were

made."); *Roy*, 1990 WL 488463, at *1. As the *Aycock* court held,

> If the defendants did not breach their duties or otherwise act in a grossly
> negligent manner, then defendants will prevail regardless of the cause of
> the losses. If the defendants did breach their duties, thereby setting in
> motion the series of events that led to the losses, then the fact that the
> economy was in decline will not excuse their conduct. . . . There will
> always be some intervening cause for the failure of these loans to be
> repaid; otherwise the bank would suffer no loss.

*Id.* (internal citation omitted); *Hecht*, 818 F. Supp. at 900; *Roy*, 1990 WL 488463, at *1 ("[T]he

proximate cause factors to which [defendants] point simply are not defenses to the claims against

them which are based upon the fact that the loans were made in the first instance.").

As for foreseeability, these cases also echo Florida law. The cases explain that whether

bank directors and officers can foresee a particular event, like the recent economic downturn,

also "is irrelevant. All that matters is whether the *types of harm* suffered by [the] Bank were

foreseeable consequences of [the defendants'] actions." *Johnson*, 2014 WL 5324057, at *5

(emphasis added); *Bierman*, 2 F.3d at 1435 (directors "could have foreseen that the loans taken

on poor or nonexistent collateral would have failed"). This point is the one that the U.S.

Supreme Court just made in *Robers*. 134 S. Ct. at 1856-59. There the Supreme Court rejected a

claim that the most recent "falling real estate market" was the relevant proximate cause of

damages on declining loan collateral, holding that "[f]luctuations in property values are common.

Their existence (though not direction or amount) is foreseeable." *Id.* For purposes of

foreseeability, the Supreme Court stated, deterioration in a loan's collateral value during the

recent recession could not "break the causal chain" in any way required to have a superseding

cause. *Id.* at 1859. The same is true of the later events that Defendants assert here.

## II.   DEFENDANTS CANNOT ESTABLISH COMPARATIVE NEGLIGENCE (SIXTH, SEVENTH, EIGHTH, THIRTEENTH, FOURTEENTH, AND TWENTY-THIRD AFFIRMATIVE DEFENSES).

Besides causation, Defendants' other principal, invalid defenses involve comparative

negligence.  Like their causation defenses, Defendants assert this set of defenses against "each

borrower and guarantor who defaulted on the loans" and Wakulla's regulators (the FDIC-C and

FOFR).  (B72, B94.)  No genuine dispute exists as to the inadequacy of these defenses either.

First, Defendants' contention that "each borrower and guarantor who defaulted"

constitutes comparative negligence is frivolous.  Neither the borrowers nor guarantors owed

either Wakulla or the FDIC-R any *tort* duties with respect to the Loan Transactions.  They had a

*contractual* relationship with the Bank.  *E.g.*, *Silver v. Countrywide Home Loans, Inc.*, 760 F.

Supp. 2d 1330, 1340 (S.D. Fla. 2011).  The only alleged borrower or guarantor misconduct—

their having "defaulted" and "failed to pay the loans or their guarantees" (B94)—reflects no

more than a rudimentary breach of contract.  Thus, there is no basis upon which these individuals

could be found comparatively negligent.

Asserting comparative fault against Wakulla's regulators is equally unavailing.  In

discovery, Defendants have identified four alleged ways in which the FDIC-C and FOFR

supposedly were at fault.  These include allegedly (i) "instructing the Bank's holding company to

withdraw" an application under the Troubled Asset Relief Program ("TARP"), which supposedly

would have resulted in Wakulla's receiving additional capital before its failure, (ii) "prevent[ing]

the Bank from continuing its operations," which supposedly kept Defendants from mitigating the

damages that they had caused, (iii) "indicating the Bank was operating properly and effectively"

and failing to "warn the Defendants of any alleged wrongful conduct," and (iv) "review[ing] at least some of the loan transactions at issue" and failing to "inform Defendants that the loans should not have been approved." (B72-73.)

None of these contentions supports a defense of comparative fault. The first problem is that no court has suggested that bank regulators owe the institutions that they regulate any duty to protect the institution from its own managers or to refrain from taking any of the other steps that Defendants have identified. Florida recognizes that tort duties can arise from four sources: legislative enactments or administrative regulations, judicial interpretations of such enactments or regulations, other judicial precedent, and "a duty arising from the general facts of the case." *Dorsey v. Reider*, 139 So. 3d 860, 863 (Fla. 2014); *McCain*, 593 So. 2d at 503; Restatement (Second) of Torts § 285. Defendants cannot identify any legislation, regulation, or judicial precedent that imposed a duty on the FDIC-C or the FOFR to permit a TARP application by Wakulla's holding company, keep Wakulla open after it had become severely undercapitalized, "warn the Defendants of any alleged wrongful conduct," or otherwise "inform Defendants that the loans should not have been approved." (B72-73.) On the contrary, federal regulations providing for periodic regulatory examinations and compliance with safe and sound banking practices state the opposite. *E.g.*, 12 C.F.R. § 337.11 ("Compliance with the provisions of this part shall not relieve an insured State nonmember bank *from its duty* to conduct its operations in a safe and sound manner." (emphasis added)).

The catchall "general facts of the case" likewise provides no authority for the Court to create new duties. "The general facts of a case may indicate a legal duty where a defendant's conduct creates a foreseeable zone of risk." *Gross v. Sand & Sea Home. Ass'n, Inc.*, 756 So. 2d 1073, 1075 (Fla. Dist. Ct. App. 2000). But this "zone of foreseeable risk" is "limited to those

endeavors that create foreseeable risks of bodily injury or property damage." *Virgilio v. Ryland Grp., Inc.*, 695 F. Supp. 2d 1276, 1281-82 (M.D. Fla. 2010).  No such endeavor is at issue here.

The same conclusion follows from Florida's refusal to recognize tort duties arising from the performance of "'discretionary' governmental functions." *Dep't of Children & Fam. Servs. v. Chapman*, 9 So. 3d 676, 681 (Fla. Dist. Ct. App. 2009) (quoting *Commercial Carrier Corp. v. Indian River County,* 371 So. 2d 1010, 1015 (Fla. 1979)).  The Florida Supreme Court in *Commercial Carrier* relied on the *express* "discretionary function" exception contained in the Federal Tort Claims Act, 28 U.S.C. § 2680(a), to *imply* an analogous exception for "judgmental government functions" to claims of "traditional tort liability" against government agencies under Florida law.  371 So. 2d at 1020; *see Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912, 917 (Fla. 1985) (citing *Commercial Carrier* for the rule that "[f]or certain basic judgmental or discretionary governmental functions, there has never been an applicable duty of care").  As the FDIC-R explained in its earlier-filed motion to strike, many federal courts recognize that the discretionary-function exception in the Federal Tort Claims Act bars claims and defenses asserted against the FDIC in both its roles as regulator and receiver.  (Dkt. 41-1 at 18.)  In ruling on that motion, this Court noted that "a lack of duty owed by the FDIC regarding its discretionary functions" could "affect the analysis under Florida law."  (Dkt. 51 at 14.)

The Court was right.  Florida recognizes that government actors may possess duties of care with respect to two types of activities that involve discretionary functions:  "capital improvements and property control operations" and "professional, educational, and general services for the health and welfare of citizens." *Wallace v. Dean*, 3 So. 3d 1035, 1048 (Fla. 2009) (quoting *Trianon,* 468 So. 2d at 919).  *None* of these circumstances applies here.  This case has nothing to do with capital improvements or property control.  Nor does it involve

-15-

professional, educational, or general services. These types of services capture "service activities, such as medical and educational services, [that] are performed by private persons as well as governmental entities." *Trianon*, 468 So. 2d at 921. Nothing suggests that regulating a federally insured financial institution bears any resemblance to medical, educational, or other services that private and public actors provide to other members of the public for their health and welfare.

Florida law in this way agrees with "the overwhelming majority of the courts" identified in the FDIC-R's motion to strike that have rejected Defendants' proposed regulatory duties, at least as a matter of federal law. (Dkt. 41-1 at 9-10 (quoting *FDIC v. Gonzalez-Gorrondona*, No. 91-2791, 1994 U.S. Dist. LEXIS 21094, at *10-12 (S.D. Fla. Mar. 10, 1994)).) Bank regulators act "to protect and stabilize the national banking system," *Trigo v. FDIC*, 847 F.2d 1499, 1502 n.4 (11th Cir. 1988)—not to "warn banks of irregularities perpetrated by their officials" or to "act[] for the benefit of the Bank or even of the Bank's depositors and other creditors." *First State Bank v. United States*, 599 F.2d 558, 563 (3d Cir. 1979). Thus, whether the Court applies federal or state law, the result is the same. No duty supports Defendants' comparative negligence defenses.

This conclusion also follows from the absence of any evidence of a breach of duty. Because no duty existed, Defendants lack any evidence of a breach as well. "Duty is the standard of conduct given to the jury for gauging the defendant's factual conduct." *Dorsey*, 139 So. 3d at 863. Yet here Defendants lack any evidence or argument that either establishes a standard of care or shows a violation of that standard. ███████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████ Defendants thus cannot show any regulatory negligence.

### III.   DEFENDANTS' MITIGATION DEFENSE FAILS AS A MATTER OF LAW (THIRTEENTH AFFIRMATIVE DEFENSE).

Defendants also insist in their Thirteenth Affirmative Defense that the FDIC-R itself "refused to mitigate damages" by allegedly failing to maximize recoveries on the Loan Transactions.  (Dkt. 37 at 4, B57, B89.)  This defense also fails.  In calculating damages, the loans in cases like this one are only "a method for measuring damages for wrongdoing" by Defendants—not the source of their liability.  *FDIC v. Appling*, 992 F.2d 1109, 1112 (10th Cir. 1993) ("If the Defendants have to pay a judgment on the FDIC claims here made, they are not paying on the loans.  Instead they would be paying on a separate personal liability for their failure of duty to the Bank.").  Consequently, the possibility of larger recoveries on the loans from other sources (like the borrowers, guarantors, or sales of collateral) ultimately is irrelevant. Each Defendant's "responsibility [is] to compensate for all harm that he causes, not confined to the net loss that the injured party receives."  Restatement (Second) of Torts § 920A, cmt. b.

Moreover, putting this basic legal problem aside, Defendants lack any evidence of a failure to mitigate in any event.  Under the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821 *et seq.*, the FDIC as receiver has the "power to take *all actions necessary* to resolve the problems posed by a financial institution in default."  H.R.Rep. No. 101-54(I), 101st Cong., 1st Sess. 2 (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 126 (emphasis added).  These powers include the responsibility to dispose of the institution's assets in a manner that "(i) maximizes the net present value return from the sale or disposition of such assets; (ii) minimizes the amount of any loss realized in the resolution of

cases; [and] (iii) ensures adequate competition and fair and consistent treatment of offerors."  12 U.S.C. § 1821(d)(13)(E); *see also* 12 C.F.R. § 360.1.

The FDIC-R disposed of the Loan Transactions through a proper exercise of this authority.  For seven of the Loan Transactions at issue, Wakulla had fully charged off the loans before the FDIC-R's appointment, and the FDIC-R transferred the charged-off loans to an acquiring institution, sold any collateral that Wakulla had obtained, or took both steps.  (B2-3, B8-9, B14-16.)  For the remaining three Loan Transactions, the FDIC-R disposed of the loans as part of an arm's length, negotiated structured-sale transaction involving a pool of loans from multiple receiverships and a competitive bidding process.  (*Id.*)  Where Wakulla had recovered collateral, the FDIC-R's selling the properties on the open market netted aggregate contract prices of just over $2 million.  (*Id.*)  For the Loan Transactions disposed of in the structured sale, the FDIC-R had approximate recoveries of $700,000.  (*Id.*)

These efforts satisfied both the FDIC-R's obligations under FIRREA and any mitigation requirement under state law.  Under Florida law, injured parties are "only accountable for those hypothetical ameliorative actions that could have been accomplished through 'ordinary and reasonable care,' without requiring undue effort or expense."  *Sys. Components Corp. v. Florida Dep't of Transp.*, 14 So. 3d 967, 982 (Fla. 2009); *Thompson v. Florida Drum Co.,* 651 So. 2d 180, 182 (Fla. Dist. Ct. App. 1995) ("Extraordinary efforts on the part of a plaintiff to mitigate are not required.").  The FDIC-R's discharge of its statutory obligations met this standard.

Defendants do not have a damages expert or any admissible evidence to the contrary.  Instead, Defendants have supplied only conjecture in response to interrogatories requesting the factual basis for their Thirteenth Affirmative Defense.  First, for fully charged-off Loan Transactions transferred to the acquiring institution for which the FDIC-R retained no collateral

(four transactions), Defendants claim only that the FDIC-R "on information and belief" has not "sought to obtain and enforce" any deficiency judgments against the borrowers and guarantors, and that with one exception, the acquiring institution has not sought to collect from those parties either. (B57, B89.) Second, for transactions where Wakulla had acquired collateral that the FDIC-R sold (three transactions), Defendants state without elaboration that the FDIC-R "failed to maximize the potential recovery for the receivership." (B57.) Third, for Loan Transactions put into the structured sale (three transactions), Defendants state only that the FDIC-R "on information and belief" allegedly failed to maximize potential recoveries by "conveying them in the structured sale" rather than foreclosing on the collateral and seeking judgments against the borrowers and guarantors. (B89.)

Defendants never have amended these interrogatory answers, which contain nothing but speculation. For the four transactions that transferred to the acquiring institution without the FDIC-R's retaining collateral, Defendants do not dispute that Wakulla itself had fully charged off these loans, thereby deeming them uncollectible. Nor can Defendants supply any evidence of borrowers or guarantors with sufficient assets to justify the cost of pursuing further collection efforts—much less fault the FDIC-R for the acquiring institution's alleged failure to make such efforts. For the three transactions that involved the FDIC-R's selling collateral, Defendants likewise do not dispute that the FDIC-R marketed the collateral and cannot present any evidence that the FDIC-R failed to take the best offers made under the circumstances. (*See* B57.) For the three transactions that involved the structured sale, Defendants do not dispute that the structured sale was an arm's length agreement negotiated with the highest bidder following a competitive bidding process for a larger pool of loans. (*See* B89.) Defendants supply no evidence that this disposition was unreasonable either.



Defendants supply no evidence of actual market demand at the retrospectively appraised value or any amount above what the FDIC-R obtained after actually marketing the property, observing the actual market demand, and accepting the best offer it received. (*See* B131.)

Mitigation requires use of "such means as are reasonable *under the circumstances* to avoid or minimize the damages." *Pa. State Police v. Suders,* 542 U.S. 129, 146 (2004) (emphasis added). The relevant questions are whether the FDIC-R was "unreasonable in refusing or failing to take action to prevent further loss" and whether that inaction actually and proximately caused further loss. Restatement (Second) of Torts § 918, cmt. c. Here, however,

neither Defendants' interrogatory answers ███████████████ address what the

FDIC-R *actually did or could have done* to avoid the tort damages that Defendants had caused.

Defendants say nothing about "the circumstances" under which the FDIC-R acted much less

provide any evidence or even opinion about the reasonableness of the FDIC-R's mitigation

efforts in light of the circumstances.  Defendants' conclusory interrogatory answers ███

████████████ are not "competent, substantial evidence" of measures that the FDIC-R

failed to take but could have "accomplished through ordinary and reasonable care." *RNK Family*

*Ltd. P'ship v. Alexander-Mitchell Assocs.*, 890 So. 2d 297, 299-300 (Fla. Dist. Ct. App. 2004)

(reversing a verdict on this basis); *FSLIC v. Tex. Real Estate Counselors, Inc.*, 955 F.2d 261, 269

(5th Cir. 1992) (requiring "evidence that the FDIC could have sold the property earlier and

received a higher price, or that the FDIC could have recovered more from the sale . . . than it

did").  Defendants' Thirteenth Affirmative Defense accordingly fails as a matter of law.

## IV.   DEFENDANTS' REMAINING AFFIRMATIVE DEFENSES ARE ALSO DEFECTIVE.

In addition to the superseding cause, comparative negligence, and mitigation defenses,

Defendants' remaining defenses also fail as a matter of law in whole or part.  The court already

has addressed some of these defenses.  Others should be disposed of summarily.

### A.   The Business Judgment Rule Does Not Apply to the FDIC-R's Negligence and Gross Negligence Claims (Second and Third Affirmative Defenses).

In their Second and Third Affirmative Defenses, Defendants invoke Florida's business

judgment rule.  *See* Fla. Stat. § 607.0830.  The Court already has held, however, that this rule

fails to protect corporate officers "from personal liability for negligent acts committed in their

capacity as officers."  (Dkt. 36 at 4-6 & n.3.)  The same holds true for the FDIC-R's claims for

gross negligence.  Under Florida law, the business judgment rule is not a defense to claims of

gross negligence. *E.g.*, *FDIC v. Aultman*, No. 2:13-CV-58-FTM-38UAM, 2013 WL 3357854, at *4 (M.D. Fla. July 3, 2013) ("Even if considering the business judgment rule appropriate, it would still only require Plaintiff to plead gross negligence."); *see also FDIC v. Stahl*, 840 F. Supp. 124, 128-29 (S.D. Fla. 1993). Moreover, even if Florida law were otherwise (and it is not), federal law sets a gross negligence "floor" that directors and officers must meet under 12 U.S.C. § 1821(k). *See Atherton v. FDIC*, 519 U.S. 213, 227 (1997); *FDIC v. Gonzalez–Gorrondona*, 833 F. Supp. 1545, 1559 (S.D. Fla. 1993). Thus, the Court should enter summary judgment against Defendants' Second and Third Affirmative Defenses insofar as they are directed to the FDIC-R's negligence claims against the Defendants who served as officers or gross negligence claims against all Defendants (Counts One and Two of the complaint).

**B.**    **Defendants' Scope of Authority and Reliance Defenses Fail as to the FDIC-R's Negligence and Gross Negligence Claims (Ninth, Tenth, Eighteenth, Nineteenth, and Twenty-Second Affirmative Defenses).**

The same problem affects Defendants' affirmative defenses of having "acted within the scope of their authority" or in "reliance" on supposed regulators' representations or information allegedly supplied to Defendants by third-party professionals. (Dkt. 37 at 3-7; B58.) Defendants already have acknowledged that they "are not seeking to hold FDIC [as receiver] liable for the conduct of FDIC [corporate] or others" through these defenses. (*See* Dkt. 52 at 4 & n.4, 5 n.5 (quoting Dkt. 43 at 18).) And to the extent that these defenses merely address the standard of care applicable to directors under Fla. Stat. § 607.0830(2), the defenses are inapplicable to Counts One and Two for the same reason that the business judgment rule itself is inapplicable. *See, e.g, FDIC v. Wells*, No. 94 C 3023, 1995 WL 387580, at *1 (N.D. Ill. Jun. 27, 1995) (rejecting reliance defenses as a matter of law for this reason).

**C.    Defendants' Imputation and Estoppel Defenses Fail (Eleventh Affirmative Defense).**

Defendants assert that if they had any "belief in the facts on which Plaintiff purports to base their alleged liability," then that knowledge "is imputed" to the FDIC-R, which "is estopped from asserting its purported claims." (Dkt. 37 at 4.)  This defense is unrecognized.  Under Florida law, "the imputation rule can only be invoked to protect innocent parties, and it is not available to the person who perpetrated the misconduct sought to be imputed." *State Dep't of Ins. v. Blackburn*, 633 So. 2d 521, 524 (Fla. Dist. Ct. App. 1994).  Florida also recognizes that because a receiver (like the FDIC-R) seeks to "salvage the assets of the Receivership entities," instead of benefiting from pre-receivership wrongdoing, the receiver is not subject to defenses premised on the wrongdoing, like *in pari delicto*, unclean hands, imputation, or other inequitable conduct. *E.g.*, *Goldberg v. Chong*, No. 07-20931-CIV-HUCK, 2007 WL 2028792, at *10 (S.D. Fla. Jul. 11, 2007) (entering summary judgment *for* the receiver on this basis); *accord Sallah ex rel. MRT LLC v. Worldwide Clearing LLC*, 860 F. Supp. 2d 1329, 1336 (S.D. Fla. 2011).

**D.    Defendants' Assumption of the Risk Defense Fails (Twelfth Affirmative Defense).**

Defendants maintain that "the doctrine of assumption of the risk" bars the FDIC-R's claims because "Wakulla Bank assumed the risk of market fluctuations in real estate." (Dkt. 37 at 4.)  This defense also fails.  "Florida courts have abolished implied assumption of the risk as a defense" and recognize express assumption of the risk only in cases of "contractual assumption of the risk and participation in contact *sports*." *Acosta v. United Rentals (N. Am.), Inc.*, No. 8:12-CV-01530-EAK, 2013 WL 869520, at *6 (M.D. Fla. Mar. 7, 2013) (emphasis in original); *see also Mazzeo v. City of Sebastian*, 550 So. 2d 1113, 1116-17 (Fla. 1989); *Blackburn v. Dorta*, 348 So. 2d 287, 292 (Fla. 1977).  Neither situation applies.

**E.**   **Defendants Cannot Show Consent, Ratification, or Authorization (Twentieth and Twenty-First Affirmative Defenses).**

Defendants also cannot prevail on their claim that the FDIC-C, FOFR, and FDIC-R "consented to, authorized, and/or ratified Defendants' alleged wrongful conduct." (Dkt. 37 at 5-6.) The consent defense relies on the rule that "no one may maintain an action to recover for an injury occasioned by an act to which he has consented." *Mitchell v. Skinner*, 796 F. Supp. 1464, 1471 (N.D. Ala. 1992); Restatement (Second) of Torts § 892A. To establish a ratification defense, "defendants must demonstrate that plaintiff[] accepted the benefits of defendants' act, had full knowledge of material facts … and made an affirmative election showing their intention to adopt the unauthorized arrangement." *Irvine v. Cargill Inv. Servs., Inc.*, 799 F.2d 1461, 1464 (11th Cir. 1986). With respect to the FDIC-C and FOFR, Defendants already have conceded that that they cannot hold the FDIC-R responsible for either regulator's conduct, whether framed as consent, ratification, or otherwise. As for the FDIC-R, Defendants cannot present any evidence showing that *it* consented to, authorized, or ratified Defendants' tortious conduct.

**F.**   **Defendants' Affirmative Defenses That Are Mere Denials Fail (First, Fifth, Fifteenth, Seventeenth, and Twenty-Fourth Affirmative Defenses).**

Finally, Defendants have asserted as affirmative defenses several contentions that are not defenses but instead merely deny components of the FDIC-R's claims. Defendants maintain in their First Affirmative Defense, for example, that the FDIC-R's complaint fails to state a claim. (Dkt. 37 at 1.) The Court already has held that the complaint states a claim in denying Defendants' motion to dismiss. *See* Dkt. 11; *see also United Fixtures Co., Inc. v. Base Mfg.*, No. 6:08CV506ORL28GJK, 2008 WL 4550212, at *4 (M.D. Fla. Oct. 8, 2008). Defendants also allege in their Fifth Affirmative Defense that the FDIC-R's claims are barred to the extent that individual Defendants had not "approved, voted for and/or assented to one or more of the Subject

Transactions." (Dkt. 37 at 2.)  But the FDIC-R is not seeking to hold any Defendant individually responsible for Loan Transactions that he did not approve, assent to, or ratify.  Defendants similarly contend in their Fifteenth Affirmative Defense that the FDIC-R cannot proceed to the extent that its "alleged damages are speculative." (*Id.* at 4.)  Florida requires damages that are only "readily ascertainable," however, which is a subject that the FDIC-R will prove at trial. *See, e.g., PNC Bank N.A. v. Marino*, No. 2:12-CV-673-FTM-29CM, 2014 WL 667780, at *2 (M.D. Fla. Feb. 20, 2014) (entering summary judgment on affirmative defenses of "speculative damages" for this reason).  Defendants additionally assert in their Seventeenth Affirmative Defense that the FDIC-R's tort damages allegedly "were not proximately caused by" Defendants. (Dkt. 37 at 5.)  "The absence of proximate cause is not an affirmative defense; rather, it is a requirement of plaintiff's cause of action." *Coquina Inv. v. Rothstein*, No. 10-60786-CIV, 2011 WL 4971923, at *15 (S.D. Fla. Oct. 19, 2011); *FDIC v. Mahajan*, 923 F. Supp. 2d 1133, 1141 (N.D. Ill. 2013).  Finally, Defendants include in their Twenty-Fourth Affirmative Defense a "reservation of rights" to "assert additional defenses." (Dkt. 37 at 7.) This defense also "is improper." *United Fixtures*, 2008 WL 4550212, at *4.  The time to assert additional defenses has passed.

## CONCLUSION

The FDIC-R respectfully requests that the Court enter summary judgment as to (i) Defendants' Second, Third, Ninth, Tenth, Eighteenth, Nineteenth, and Twenty-Second Affirmative Defenses (with respect to Counts One and Two of the complaint) and (ii) all of Defendants' remaining defenses in their entirety.

Dated: November 14, 2014

/s/ Valarie Hays

Ronald S. Safer
Antony S. Burt
Valarie Hays
Lawrence H. Heftman
Kevin Reidy
SCHIFF HARDIN LLP
233 S. Wacker Drive, Suite 6600
Chicago, Illinois 60606
(312) 258-5500 (t)
(312) 258-5600 (f)
rsafer@schiffhardin.com
aburt@schiffhardin.com
vhays@schiffhardin.com
lheftman@schiffhardin.com
kreidy@schiffhardin.com

Kenneth R. Hart
Robert N. Clarke, Jr.
AUSLEY McMULLEN
123 S. Calhoun Street
P.O. Box 391
Tallahassee, Florida 32301
(850) 425-5462 (t)
(850) 222-7560 (f)
khart@ausley.com
rclarke@ausley.com

*Counsel for the Federal Deposit Insurance Corporation as Receiver for Wakulla Bank*

## CERTIFICATE OF SERVICE

I certify that on November 14, 2014, I electronically transmitted the foregoing to the Clerk's Office using the CM/ECF System, which will send notice of the filing to counsel for all parties having appeared of record.

/s/ Kevin Reidy